UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.: 3:19CR014 (JAM) |
| PLAINTIFF | : | |
| | : | |
| V. | : | |
| | : | |
| SAMUEL COPENHAVER, | : | |
| DEFENDANT | : | June 23, 2021 |

### DEFENDANT SAMUEL COPENHAVER'S
### MEMORANDUM IN AID OF SENTENCING

**I.     INTRODUCTION**

On October 10. 2019, defendant Samuel Copenhaver pled guilty to Count One of Indictment No. 3:19CR014 (JAM) which charged him with Conspiracy, in violation of 18 U.S.C. § 371, and to Count Five of the same Indictment which charged him with Wire Fraud, in violation of 18 USC § 1343. Mr. Copenhaver and the undersigned have reviewed the Pre-Sentence Report prepared by United States Probation Officer Michael Jones.  The presentence report describes the nature of the offense to which the defendant pled guilty, the government's criminal investigation, and the defendant's background, and calculates the defendant's Sentencing Guidelines imprisonment range, supervised release range, fine range and other sentencing options.  The defendant now stands ready for sentencing.

This Memorandum is submitted on behalf of Mr. Copenhaver who is scheduled to be sentenced by the Court on July 7, 2021.  It is hoped that the undersigned is articulate enough to identify and document Mr. Copenhaver's individual characteristics to assist the

1

Court in determining a sentence that is appropriately tailored to serve both the interests of justice and the sentencing goals of 18 U.S.C. § 3553(c).

The undersigned is uniquely aware that by asking for the "whole loaf," one often comes away without even a "slice." However, the undersigned suggests that Mr. Copenhaver's unique set of circumstances viewed together with this particular prosecution and the § 3553(a) factors, warrant a non-guideline sentence and that a significant variance from his advisory sentencing guidelines is warranted. Mr. Copenhaver respectfully requests that the Court impose a non-incarceratory sentence of time served and home detention. Such a sentence, considering this specific individual, would be sufficient, but no greater than necessary to achieve the purposes of sentencing.

## II.     BACKGROUND OF THE OFFENSE

### A.     Introduction

On or about January 15, 2019, a sealed Indictment was returned before a District of Connecticut Grand Jury which named Samuel Copenhaver and two others with participating in a Wire and Mail Fraud scheme. The Indictment described the defendants as participating in a fraud against the Bureau of Prisons by facilitating and attempting to facilitate the entry of federal inmates into the BOP's Residential Drug Abuse Program ("RDAP"), when in fact the inmates were not eligible to participate in RDAP.

On January 23, 2019, Mr. Copenhaver was arrested in the Western District of Michigan, the District of his residence (specifically the city of Grand Rapids) and presented before a Magistrate Judge. Mr. Copenhaver was ordered released on conditions and ordered to travel to the District of Connecticut for his arraignment on the pending charges. On

February 4, 2019, the defendant appeared before a District of Connecticut Magistrate Judge, was arraigned on the Indictment and was ordered released on the conditions previously set in the Western District of Michigan, whereupon Mr. Copenhaver returned to Grand Rapids.

Upon disclosing to his Western District pretrial services officer of his itinerant living situation, Mr. Copenhaver was placed in a residential program called Alternative Directions. This residential program is a halfway house/re-entry program for state offenders who were transitioning from incarceration back into their communities. Alternative Directions included 24-hour supervision, nightly lockdown, drug and alcohol testing, anger management classes, AA classes and a work component that requires all residents to perform upwards of 40 hours of labor for less than minimum wage. Mr. Copenhaver remained a resident of Alternative Directions for seven months until the Court modified his conditions to permit him to relocate to a normal residence.

On October 10, 2019, Mr. Copenhaver pled guilty before this Court to Count One of the Indictment, charging him with Conspiracy, in violation of 18 U.S.C. §§371, and Count Three of the Indictment, charging him with Wire Fraud, in violation of 18 U.S.C. § 1343.

Pursuant to the Plea Agreement dated October 10, 2019, and entered into between the government and the defendant, the parties attempted to determine the applicable U.S. Sentencing Guidelines. As the instant offenses involved a scheme to defraud the Bureau of Prisons, the Fraud guidelines, found at U.S.S.G. § 2B1.1, were utilized. As one of the determining factors of the Fraud guideline is a consideration of the offense's "loss," the parties considered the calculation of loss relevant to Mr. Copenhaver's conduct. As that measure of loss could not be reasonably determined, the parties agreed to calculate "gain as an alternative measure." See U.S.S.G. § 2B1.1, Application Note 3(b). The parties

determined that the defendant's prior conviction for Driving While Intoxicated was countable as 2 points in his criminal history calculation and Mr. Copenhaver was therefore in Criminal History Category II. As a result of the parties' calculations, Mr. Copenhaver's Sentencing Guideline Total Offense level was determined to be 24 with a sentencing range of 57 to 71 months.

It is Mr. Copenhaver's request that the Court impose a sentence of time served and home confinement as punishment for his criminal conduct. Such a sentence would be a non-guideline sentence and would be arrived at by determining that in Mr. Copenhaver's specific situation that, after reviewing his individual characteristics and personal history, a variance from the sentencing guidelines is appropriate.[1] Such a sentence would also be arrived at by determining that a guideline sentence would be unduly harsh, unjustified, and greater than necessary to satisfy the directives of 18 U.S.C. § 3553(a).

B. **PERSONAL HISTORY AND CHARACTERISTICS**

Much of Sam Copenhaver's personal history has been documented in Probation Officer Jones' thorough Presentence Report and as a result, rather than repeating Officer Jones' narrative, undersigned will supplement only those areas which will provide a basis for Mr. Copenhaver's sentencing request.

---

[1] A court may impose a sentence outside the properly calculated sentencing guideline range through either a departure or a variance. A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a). See U.S. Sentencing Commission, Departure and Variance Primer, June 2013 (http://www.ussc.gov/sites/default/files/pdf/training/primers/Primer_Departure_and_Variance.pdf).

As identified above, the scheme to defraud was predicated on the defendants convincing the Bureau of Prisons to admit inmates not otherwise eligible for admission into the RDAP program by coaching these inmates on how to respond to questions about their non-existent substance abuse problems. One of the significant ironies of the instant prosecution is that Sam Copenhaver suffered from a near lifetime of substance abuse issues and would have certainly met BOP's criteria for admission into RDAP. Mr. Copenhaver's alcohol addiction began when he was an adolescent and although he reported to Probation Officer Jones that he did not consider himself an alcoholic, his description of drinking six 24-ounce bottles of beer every day, his physical dependance, the shakes and three arrests for driving while intoxicated certainly demonstrate that Mr. Copenhaver did not have a casual relationship with alcohol. Alcohol has led to Mr. Copenhaver losing employment, the loss of his ability to drive a car, and his estrangement from his ex-wife and children.

It was during these times of constant inebriation that Mr. Copenhaver met Tony Pham, the Svengali of this charged fraud. In the early 2010s, Mr. Copenhaver responded to an ad on Craigslist for a laborer. The ad was placed by Tony Pham, who was looking for someone to help work on a house in Michigan. Mr. Copenhaver worked Mr. Pham for several months doing odd carpentry jobs and then Pham moved Mr. Copenhaver to a Pizzeria that Pham owned. After working for Pham for several months, Mr. Copenhaver was informed by Pham that he had been convicted of a crime and was to soon start a 36-month sentence. Mr. Copenhaver found other employment at a Grand Rapids shoe store. Sixteen months after Pham reported to prison, he contacted Mr. Copenhaver and let him know that he was about to be released.

Upon his release, Pham contacted Mr. Copenhaver and told him that he had identified a need for someone to assist inmates who could not otherwise get into a prison drug program – a program that resulted in a year reduction of the inmates' sentences – and that Pham was going to start RDAP Law Consultants. Without knowledge of the law, the prison system, drug treatment programs or having ever worked in sales, at some point Mr. Copenhaver began working for Mr. Pham in this endeavor.

Although Paragraph 9 of the presentence report indicates that Mr. Copenhaver "[a]t all times… knew and understood that many [RDAP Law Consultants] did not have any such disorders and, thus, were ineligible for the RDAP," that is not Mr. Copenhaver's recollection of his involvement. In fact, it was not until quite late in Pham's scheme to defraud the BOP that Sam Copenhaver realized he was committing a crime. Prior to this realization, Mr. Copenhaver was initially employed by Pham to renovate an office in East Lansing, Michigan and work as the buildings' custodian. Afterwards, Mr. Copenhaver and other employees hired by Tony Pham's RDAP Law Consultants began to use RDAP Law Consultants' sales pitches conceived and scripted by Pham, these employees believing that what they were doing was above-board. During the course of RDAP Law Consultants' operation, Mr. Copenhaver received referrals from practicing attorneys, and discussed the legal aspects of the business with a former judge in Ohio who Mr. Copenhaver believes went into partnership with Pham and worked with medical professionals hired by Pham. For a substantial period of time, Mr. Copenhaver was taken in by the same artifice as the Bureau of Prisons.

It was not until Mr. Copenhaver realized that Mr. Pham's coaching the inmates on how to answer questions posed by the BOP and use of private substance abuse counselors to create medical records, did Mr. Copenhaver understand that, for some RDAP Law

Consultants clients, Mr. Copenhaver's own role in the business had moved from inmate advocacy and assistance to unlawful fraudulent behavior. Mr. Copenhaver readily admits he continued to work at RDAP Law Consultants and engage in deceptive, illegal actions.

But the Court should also know that Mr. Copenhaver's acceptance of responsibility for his criminal involvement in the crimes identified in the Indictment does not mean that every RDAP Law Consultants client was undeserving of services.

Mr. Copenhaver believes that he left RDAP Law Consultants sometime in early 2018. As the Court is aware, Mr. Copenhaver was arrested in January 2019.

Since Mr. Copenhaver's arrest, he has both struggled and persevered. As has been identified above, pretrial services placed Mr. Copenhaver in Alternative Directions, a halfway house for offenders preparing to reenter society after months or years spent incarcerated. This was not "home confinement" or "house arrest." Alternative Directions was in many ways, for Mr. Copenhaver and for the other individuals there, confinement with 24-hour supervision, drug and alcohol testing, nighttime lockdown and required labor. During the eight months that Mr. Copenhaver spent at Alternative Directions, he was able to stay sober but lost all his possessions. During the time he spent at Alternative Directions, Mr. Copenhaver began addiction and mental health counseling but lost his girlfriend. Yes, Mr. Copenhaver readily agrees that Alternative Directions was better than residing at the Wyatt Detention Center prior to the resolution of his case, but only by a little.

When finally released from Alternative Directions, Mr. Copenhaver found living arrangements and work in Grand Rapids. First as a laborer and then as an employee of two pizzerias, Mr. Copenhaver began to earn enough money to pay rent, manage his meager expenses and begin to pay child support arrearages. Mr. Copenhaver had failed for several

7

years to pay court ordered child support but with his newfound employment, Mr. Copenhaver has acknowledged his responsibilities and made arrangements with his employers to garnish his wages and to date has paid thousands of dollars towards child support.

In early 2020, unable to remain at his residence, Mr. Copenhaver moved into a men's homeless shelter in Grand Rapids. Mr. Copenhaver remained in the shelter until he contracted COVID19 and was removed by the City of Grand Rapids. The Kent County Health Department then placed Mr. Copenhaver in a hotel complex where he was given a hotel room and told not to leave for the 14-day quarantine period. Once the 14-day period had ended, Mr. Copenhaver was permitted to move back to the homeless shelter.

Since those dark days in mid-2020, Mr. Copenhaver has been renting a room he can afford and has maintained constant employment. Mr. Copenhaver has received both doses of the Pfizer vaccine and although a constant, daily struggle, he has maintained his sobriety.

Mr. Copenhaver is now ready for sentencing.

C. **THE APPROPRIATE SENTENCE**

A District Court should normally begin all sentencing proceedings by calculating, with the assistance of the Presentence Report, the applicable Guideline Range. Gall v. United States, 128 S. Ct. 586, 596 (2007). The Guidelines provide the "starting point and the initial benchmark" for sentencing, Gall, 128 S. Ct at 596, and the District Courts must "remain cognizant of them throughout the sentencing process." Id, at 596 n.6. Now, however, it is clear that the Guidelines are guidelines – that is, they are truly advisory. United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) [Emphasis added]. "A District court may not

presume that a Guideline sentence is reasonable, it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District Judges are, as a result, generally free to impose sentences outside the recommended range. Id. Once again, District judges may exercise discretion in fitting sentences to a defendant's individual characteristics. United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005).

In exercising this discretion, judges are guided by 18 U.S.C. § 3553(a), which directs them to impose a sentence that is "sufficient, but not greater than necessary" to, among other considerations, "reflect the seriousness of the offense, . . . promote respect for the law, and provide just punishment for the offense," and to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). The statute also directs courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

## **ARGUMENTS**

**A Below Guideline Sentence or Variance Is Appropriate In This Case.**

**A. The Loss Amount Attributed to the Defendant Substantially Overstates the Defendant's Culpability.**

As was identified above, one of the determining factors of Mr. Copenhaver's fraud guideline calculation was the consideration of the offense's "loss." In crafting a plea agreement, the parties considered the calculation of loss relevant to Mr. Copenhaver's

conduct. As that measure of loss could not be reasonably determined, the parties agreed to calculate "gain as an alternative measure." See U.S.S.G. § 2B1.1, Application Note 3(b). But "gain" in this context is an imperfect yardstick by which to measure Mr. Copenhaver's culpability. In the United States Sentencing Commission's Primer on Loss Calculations under § 2B1.1(b)(1),[2] the commission explains:

> The sentencing guidelines instruct the sentencing court to "use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." However, the guidelines previously noted, and courts have continued to hold, that substituting the gain for the loss is not the preferred method as it "ordinarily underestimates the loss." Sentencing judges are cautioned against "abandoning a loss calculation in favor of a gain amount where a reasonable estimate of the victims' loss . . . is feasible." Courts cannot use gain "as a proxy for each defendant's culpability" and must properly calculate loss when possible to do so. A sentencing court cannot sentence based on gain if it has previously determined that there is "no loss" as opposed to an incalculable loss. (Footnotes omitted).

Mr. Copenhaver submits that the "gain" attributed to him as an alternative to loss (to wit, adding 14 levels to his Sentencing Guideline calculation) does not underestimate the loss associated with his criminal activity but instead greatly exaggerates the loss.

███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

---

[2] ████████████████████████████████████████████████





**B. Widespread Disagreement with the Fraud Guidelines is Evidence that it is Unsound**

The Sentencing Reform Act of 1984 directed the Sentencing Commission to promulgate guidelines that "assure the meeting of the purposes of sentencing." 28 U.S.C. § 991(b)(1)(A), and to use as a "starting point" the average sentences imposed, and prison times actually served during the pre-Guideline period, 28 U.S.C. § 994(m). Congress also instructed the Commission to review and revise the Guidelines in light of sentencing data, criminological research, and consultation with frontline actors in the criminal justice system. See 28 U.S.C. §§ 991(b)(1)(C), (b)(2), 994(o), 995(13), (15) and (16). But the original

Commissioners abandoned efforts to design the Guidelines based on the purposes of sentencing after failing to agree on the predominating purposes, they instead drafted the Guidelines primarily based on an empirical approach drawn from pre-Guidelines sentencing practices. See U.S.S.G., ch. 1, pt. A, §3 (2015); Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 15-18 (1988).

The Supreme Court has offered two reasons for why it still may be fair to assume that the Guidelines "reflect a rough approximation" of sentences that "might achieve § 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 348-50 (2007). First, the original Commission used an "empirical approach," which began with an examination of 10,000 presentence reports setting forth what judges had done in the past." Id. At 348-49. Second, the Commission continually reviews and revises the Guidelines based on judicial feedback through sentencing decisions and consultations with other frontline actors, civil liberties groups and experts. Id. at 350.

But not all Guideline provisions were developed in this manner, and hence it is unfair to assume that they too reflect a rough approximation of the sentences achieving section 3553(a)'s objectives. See Gall v. United States, 552 U.S. 38, 46 n.2 (2007) (citing Kimbrough v. United States, 552 U.S. 85, 96 (2007). For example, when formulating the Guidelines for crack-cocaine offenses, the Commission "did not take account of 'empirical date and national experience'" Kimbrough, 552 U.S. at 109. In these circumstances, a district court may conclude that the particular guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 110.

The loss Guideline used to calculate Mr. Copenhaver's advisory Guideline range similarly fails to account for empirical date and national experience, yielding a greater than necessary sentence. United States v. Corsey, 732 F.3d 366, 389 (2d Cir. 2013)(Underhill, J., concurring)("The loss guideline….was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices.") As the Court said in Corsey, "[t]he Sentencing Commission set the original 1987 Guidelines for economic offenses higher than historical sentences in order to further the deterrence and just punishment goals of sentencing." Id. at 379. And Congress, through a series of three amendments "effectively multiplied several times the recommended sentence applicable in 1987." Id. at 380. These amendments were all adopted "without the benefit of empirical study of actual fraud sentences by the Sentencing Commission." Id. This "history of bracket inflation … renders the loss guideline fundamentally flawed." Id.

Because the Commission failed to fulfill its institutional role, the Court should give little heed to the exaggerated, one-size-fits-all method of the fraud guidelines and give far more reliance on the considerations set forth in § 3553(a). See Corsey, 723 F.3d at 380.

C. **A SENTENCE OF TIME SERVED IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF SENTENCING**

It is submitted that in the instant case, a sentence of time served is sufficient to serve the goals of sentencing. Such a non-guideline sentence is an appropriate punishment for Mr. Copenhaver's offense based on factors set forth in 18 U.S.C. § 3553(a) and would achieve the statute's four goals: punishment, protection of society, deterrence and rehabilitation.

While punishment is necessary in the instant case, the defendant need not be isolated to make the community safer. In fact, Mr. Copenhaver's post-release behavior during the past 30 months where he was confined at Alternative Directions and participating in substance-abuse and mental health treatment, demonstrates that the community has nothing to fear and that the defendant is committed to and is working diligently towards rehabilitation.

Mr. Copenhaver well understands that adequate respect for the law and/or general deterrence are critical goals which the Court's sentence must address. When the issue of how to promote respect for the law in Mr. Copenhaver's case is considered, it is critical that the unique circumstances of this case be viewed in the context of Mr. Copenhaver's history and characteristics.

The defendant submits that upon consideration of all the factors enumerated above, the Court can find that a sentence of time served with a period of probation is sufficient but no greater than necessary to accomplish the purposes of sentencing.

### III.     CONCLUSION

For the foregoing reasons, defendant Sam Copenhaver respectfully requests that the Court impose a sentence that is "sufficient, but not greater than necessary," to satisfy all of the relevant sentencing goals set forth in 18 U.S.C. § 3553(a).

                                    Respectfully Submitted,

                                    The Defendant
                                    Samuel Copenhaver

                                    _/s/ Bruce D. Koffsky__
                                    Bruce Donald Koffsky, Esq.
                                    Koffsky & Felsen, LLC
                                    1150 Bedford Street
                                    Stamford, Connecticut  06905
                                    Tel.  203-327-1500
                                    Fax.  203-327-7660
                                    bkoffsky@snet.net
                                    Fed Bar No.  ct03772

CERTIFICATION

THIS IS TO CERTIFY that on June 23, 2021, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Bruce D. Koffsky__
Bruce D. Koffsky